**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **NOEL FALLON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TERRACON CONSULTANTS, INC.,**<br><br>**Defendant.** | **Case No. 2:26-CV-02212-JAR-ADM** |

**MEMORANDUM AND ORDER**

Plaintiff Noel Fallon brings this action against her former employer, Defendant Terracon Consultants, Inc., alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act of 1990 ("the ADA"). This matter is before the Court on Defendant's Motion for Partial Dismissal of Plaintiff's Complaint (Doc. 9). The motion is fully briefed, and the Court is prepared to rule. For the reasons explained below, the Court grants in part and denies in part Defendant's motion.

## I. Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[1] and must include "enough facts to state a claim for relief that is plausible on its face."[2] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3] The plausibility standard

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Wright & Miller's Federal Practice and Procedure § 1216 (3d ed. 2004)).

[2] *Id*. at 570.

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[4] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

In *Khalik v. United Air Lines*,[7] the Tenth Circuit provided an extensive analysis for applying this pleading standard to employment discrimination and retaliation claims.[8] The court was careful to note that under *Twombly*, the plaintiff is not required to "set forth a prima facie case for each element" to successfully plead a claim of discrimination.[9] Instead, he is only required to "set forth plausible claims."[10] Nevertheless, "the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim."[11]

## II. Background

The following facts are alleged in Plaintiff's Complaint. In May 2022, Plaintiff Noel Fallon began working for Defendant Terracon Consultants, Inc. as a Senior Communications Strategist. In May 2023, Plaintiff and her team met with Jana Dawson to discuss Pride Month materials for an upcoming inclusion event. During the meeting, Dawson instructed the team that

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[5] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[7] 671 F.3d 1188 (10th Cir. 2012).

[8] *Id.* at 1193–94.

[9] *Id.* at 1193.

[10] *Id.*

[11] *Id.* at 1192.

the Pride Month materials needed to say that the company "recognize[s]" instead of "celebrate[s]" Pride Month, even though materials used for previous inclusion events, like Black History Month and Women's History Month, used "celebrate[s]."[12] Dawson explained to the team that "it was different with individuals who are gay because one could look at someone and know they were Black but could not look at them and know they were gay."[13] Plaintiff disagreed, and she told Dawson that the team should write the Pride Month materials the same way as the materials for the previous inclusion events.

In a subsequent call, Plaintiff reiterated her complaint about the way Defendant planned to acknowledge Pride Month. Dawson explained to Plaintiff that she had a gay friend who told her that she needed to "meet people where they were."[14] After the call, Plaintiff later inquired into the guidelines for using "celebrating versus recognizing and when each should be used," with the Chief of Human Resources and Dawson.[15] After this inquiry, Dawson reprimanded Plaintiff and told her that she needed to "be more comfortable with ambiguity."[16]

In September 2023, Dawson became Plaintiff's direct supervisor. Soon after, Dawson started excessively scrutinizing Plaintiff's work. Dawson also spoke harshly to Plaintiff, embarrassed Plaintiff in front of others, and dismissed Plaintiff's comments in meetings. When Plaintiff was on vacation with her family, Dawson repeatedly contacted her by text and email, demanding certain tasks to be completed immediately. This caused Plaintiff extreme stress and interfered with her family vacation.

---

[12] Doc. 1 ¶¶ 24–25.

[13] *Id.* ¶ 24.

[14] *Id.* ¶ 27.

[15] *Id.* ¶ 28.

[16] *Id.* ¶ 29.

Dawson also began interfering with Plaintiff's obligations as a mother. Plaintiff had originally enjoyed a flexible work environment with the ability to work from home. But on August 7, 2024, while Plaintiff worked from home because her two young daughters had COVID-19, Dawson emailed Plaintiff "complaining about Plaintiff working from home, citing Plaintiff's obligations as a mother, stating that Plaintiff was not meeting her work obligations and that it was not fair to Plaintiff's children."[17] At that time, Plaintiff was the only member of her team that had young children.

Plaintiff eventually reported Dawson to her human resources manager, Sarah Gilliland. Plaintiff reported that Dawson called Plaintiff a "victim" and "defiant."[18] Plaintiff's coworker, Laura Hunt, also reported that Dawson was discriminating against Plaintiff to Chief People Officer Stephanie Prior. However, Defendant never took corrective action against Dawson.

On August 8, 2024, Dawson and Plaintiff had a one-on-one in-person meeting about Plaintiff failing to meet her work obligations and how Plaintiff and her co-workers noticed that Dawson treated Plaintiff differently than other staff. During this meeting, Dawson admitted that Plaintiff was meeting her work obligations. But later that day, Dawson called Plaintiff back to her office, along with Plaintiff's two counterparts, Hunt and Nancy Griego. Dawson stated, "Noel says I treat her differently than I treat you. Would anyone like to speak to that?"[19] Hunt raised her hand and provided several examples. One example was the reprimand. Another example was an instance where Dawson made fun of Plaintiff in front of the team. Plaintiff was uncomfortable and visibly shaking during the meeting.

---

[17] *Id.* ¶ 38.

[18] *Id.* ¶ 41.

[19] *Id.* ¶ 47.

On September 8, 2024, Plaintiff was prescribed medication specifically to help her get through future meetings with Dawson. Moreover, around this time, Dawson told Plaintiff that she was no longer allowed to work from home, even when one of her children was under a five-day quarantine for COVID-19. Instead, Plaintiff had to use her PTO days to work from home, which Defendant had never previously required. Meanwhile, another employee, Jayce Breese, was permitted to work from home without using PTO days, to take care of her boyfriend after his motorcycle accident.

Around September 24, 2024, Dawson emailed Plaintiff a list of her job responsibilities and stated that Plaintiff needed to meet them. Plaintiff responded that she believed she was already meeting the listed responsibilities, and she asked for examples to help her understand the problem. Dawson never responded or otherwise provided examples. But on October 9, 2024, Plaintiff had a meeting with Dawson and Gilliland where Dawson terminated Plaintiff's employment. Before her termination, Plaintiff had never received any write-ups, disciplinary actions, or performance improvement plans from Defendant.

On April 24, 2025, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission against Defendant ("the EEOC Charge"), and the EEOC issued her a Notice of Right to Sue on January 23, 2026. On April 16, 2026, Plaintiff filed her Complaint alleging Defendant engaged in sex discrimination and retaliation in violation of the Title VII, and disability discrimination and retaliation in violation of the ADA.

## III. Discussion

Plaintiff alleges four claims for relief: (1) Count I for sex discrimination under Title VII, (2) Count II for disability discrimination under the ADA, (3) Count III for retaliation under Title VII, and (4) Count IV for retaliation under the ADA. Defendant moves to partially dismiss

Plaintiff's retaliation claims to the extent they are untimely on two grounds. First, Defendant argues that Count III is time-barred to the extent it relies upon Plaintiff's complaints about Pride Month and her reprimand. Second, Defendant argues that Plaintiff's retaliation claims in Counts III and IV cannot be based on the EEOC Charge as protected activity, because it was filed after Defendant's alleged retaliation. The Court will address both arguments in turn.

**A. Pride Month Allegations**

Title VII requires a plaintiff to exhaust her administrative remedies by filing a charge with the EEOC within 300 days of the alleged discrimination.[20] A plaintiff's failure to exhaust administrative remedies is no longer a jurisdictional bar to suit, but instead "permits a defendant only an affirmative defense."[21] This requirement exists because "Title VII is not intended to allow employees to dredge up old grievances"—"[u]nlitigated bygones are bygones."[22]

Discrete claims of discrimination or retaliation are considered to have occurred on the day the act happened.[23] Claims that fall outside the applicable 300 day window are time-barred.[24] However, "the statute does [not] bar an employee from using the prior [untimely] acts as background evidence to support [her] timely claim[s]."[25]

[20] 42 U.S.C. § 2000e-5. "The 300 day limitation applies in those states that have statutorily prohibited discrimination," such as Kansas. *Sloan v. Boeing Co.*, No. 95-3354, 1997 WL 8868, at *2 & n.4 (10th Cir. Jan. 19. 1997). Otherwise the limit is 180 days. *Id.* (citation omitted).

[21] *Brown v. Keystone Learning Servs.*, 804 F. App'x 873, 882 (10th Cir. 2020) (citing *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1183 (10th Cir. 2018)).

[22] *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005)

[23] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–13 (2002).

[24] *Id.* at 109.

[25] *Id.* at 113.

In Count III, Plaintiff alleges retaliation in violation of Title VII based on four protected activities: (1) her May 2023 complaints about how Defendant acknowledged Pride Month; (2) reporting sex discrimination and hostile treatment to human resources; (3) confronting Dawson about the discriminatory treatment; and (4) filing the EEOC Charge.[26] Count III then alleges that Defendant retaliated against Plaintiff because she engaged in these protected activities, through a non-exhaustive list of six materially adverse actions: (1) the reprimand; (2) the August 8, 2024 meeting; (3) restricting Plaintiff's ability to work from home; (4) requiring Plaintiff to use PTO; (5) subjecting Plaintiff to continued hostile treatment and heightened scrutiny; and (6) the termination.[27] Defendant moves to dismiss Count III to the extent it relies on the reprimand as an adverse action and the Pride Month complaints as protected activity. The Court will address each argument in turn.

First, Defendant argues that the retaliation claim based on the reprimand is time-barred because it occurred more than 300 days before Plaintiff filed the EEOC Charge. The EEOC Charge was filed on April 24, 2025, so the relevant 300 day window for a discrete claim of retaliation to be actionable began on June 28, 2024. The reprimand occurred in May 2023, over a year before that relevant period began. Thus, the Court agrees with Defendant that any discrete

[26] Doc. 1 ¶ 95.

[27] *Id.* ¶ 97.

retaliation claim based upon the reprimand is untimely. The Court therefore dismisses with prejudice[28] Count III to the extent it relies upon the reprimand as a discrete adverse action.[29]

However, Count III is *not* dismissed to the extent it relies on the other five alleged adverse actions.[30] And the Court agrees with Plaintiff that the May 2023 reprimand can still be used as background evidence to support Plaintiff's timely claims.[31] In other words, she may still rely upon the reprimand "to the extent such evidence is in fact probative of the discriminatory or retaliatory animus required for her timely claims."[32]

Second, Defendant argues that the Pride Month complaints cannot be protected activity because they are only causally linked to the untimely reprimand. The Court disagrees. Although Plaintiff alleges that her complaints about how Defendant acknowledged Pride Month were closely followed by her reprimand, it does not necessarily follow that her termination—or the other adverse actions—could not have also been caused by her Pride Month complaints. Count

---

[28] Plaintiff argues that dismissal of any portion of Counts III or IV should be without prejudice and with leave to amend, relying on *Smith v. Cheyenne Ret. Inv'rs L.P*, 904 F.3d 1159, 1166 (10th Cir. 2018) (emphasis added). But the dismissal in *Smith* was based on failure to exhaust administrative remedies. "Failure to exhaust administrative remedies is often a temporary, curable, procedural flaw. If the time permitted for pursuing administrative remedies has not expired, a p[laintiff] who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit (in the event the administrative claim fails to afford him the desired relief)." *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005) (quoting *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1213 (10th Cir. 2003)).

Here, Plaintiff cannot wind back the clock to timely bring the EEOC Charge based on the May 2023 reprimand. Therefore, dismissal should be with prejudice. *See Baker v. Transam Trucking, Inc.*, No. 25-2666-JWB, 2026 WL 2220627, at *4 (D. Kan. Aug. 3, 2026) (explaining that dismissal with prejudice is appropriate where Title VII dismissal is based on an untimely charge of discrimination).

[29] *See Weaver v. Kan. State Univ.*, No. 25-4043-DDC, 2026 WL 516866, at *5–6 (D. Kan. Feb. 25, 2026) (dismissing the plaintiff's Title VII claims only "to the extent they rely on pre-June 7, 2023, allegations").

[30] Defendant's motion does not contend that any of these other five claims of retaliation are defective, only the claim based on the reprimand. *See* Doc. 10 at 4 n.1 ("Plaintiff alleges additional discrete incidents of retaliation under Title VII and the ADA which are not at issue for purposes of this Motion.").

[31] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

[32] *Harris v. Kan. City, Kan. Fire Dept.*, No. 18-2084-JAR, 2021 WL 794900, at *5 (D. Kan. 2021); *see also Sunderman v. Westar Energy Inc.*, 307 F. App'x 224, 229–30 (10th Cir. 2009) (finding district court erred by not considering prior acts of discrimination as background evidence).

III alleges that all four protected activities caused—at least in part—all of the alleged adverse actions.[33] And Plaintiff's factual allegations plausibly support that claim: immediately after making the Pride Month complaints, Dawson's pattern of retaliatory conduct against Plaintiff began.[34] At the pleading stage, Plaintiff is not required to demonstrate more.[35] The Court therefore denies Defendant's partial motion to dismiss to the extent it argues that the Pride Month complaints cannot serve as relevant protected activity for Count III.

### B. The EEOC Charge

Defendant next moves to dismiss as untimely the retaliation claims in Counts III and IV to the extent they allege that the EEOC Charge is protected activity.[36] Defendant argues that it is "[i]mpossible" for the EEOC Charge to be considered protected activity that caused Defendant's retaliatory actions because the EEOC Charge occurred after all the retaliatory acts Plaintiff alleges in Counts III and IV.[37] The Court agrees.

---

[33] Specifically, Plaintiff alleges that Defendant took all the listed adverse actions under Count III "after and because of Plaintiff's protected activity," Doc. 1 ¶ 97, and that "[t]he adverse actions closely followed Plaintiff's *protected complaints* and were expressly connected to her opposition to discrimination." *Id.* ¶ 98 (emphasis added).

[34] Plaintiff plausibly alleges that the pattern of retaliation includes the August 8, 2024 meeting, Dawson requiring Plaintiff to use PTO for vacation, Dawson restricting Plaintiff's work-from-home privileges, and Dawson's heightened scrutiny of Plaintiff's work. *Id.* ¶ 97; *see, e.g.*, *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) (finding that plaintiff sufficiently pled retaliation under FLSA because the plaintiff alleged a pattern of retaliatory conduct that began shortly after the protected activity, even though his termination did not occur until much later); *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 n.4 (6th Cir. 1984) (reversing district court's judgment for defendant because the district court overly relied upon the year and a half gap between the protected activity and discharge, and "ignored evidence introduced by plaintiff, which if believed, would raise an inference that defendant had engaged in a pattern of retaliatory conduct beginning soon after plaintiff filed discrimination charges").

[35] *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (finding that the plaintiff is not required to "set forth a prima facie case for each element" to successfully plead a Title VII claim).

[36] Doc. 1 ¶ 95 ("(d) filing a Charge of Discrimination with the EEOC."); *id.* ¶ 102 ("(d) filing a Charge of Discrimination with the EEOC expressly invoking the ADA.")

[37] Doc. 10 at 2 ("Plaintiff also brings claims for retaliation under Title VII and the ADA based on alleged adverse employment actions the Company took against her for 'filing a Charge of Discrimination with the EEOC.' Impossible.")

Under both Title VII and the ADA, a plaintiff must demonstrate a but-for causal connection between the protected activity and the subsequent retaliation they allegedly experienced.[38] Thus, as the Tenth Circuit has held, "for a protected activity to *cause* the adverse employment action, the adverse action must necessarily occur *after* the protected activity."[39]

Here, the last alleged adverse action was Plaintiff's termination, which occurred on October 9, 2024. Plaintiff filed the EEOC Charge over five months later, on April 24, 2025. Thus, because the last adverse action occurred months before the EEOC Charge, Plaintiff cannot demonstrate that the EEOC Charge was the but-for cause of the adverse actions listed in Counts III and IV. The Court therefore dismisses with prejudice Counts III and IV to the extent the claims rely upon the EEOC Charge as protected activity. Counts III and IV otherwise survive Defendant's motion to dismiss.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Partial Dismissal of Plaintiff's Complaint (Doc. 9) is **granted in part and denied in part**. Defendant's motion is **granted** as to Count III for Title VII retaliation to the extent it relies upon allegations of the reprimand as an adverse action, and as to the retaliation claims in Counts III

[38] *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . ."); *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018) ("To establish a causal connection, a plaintiff must present evidence of circumstances that justify an inference of retaliatory motive. The Supreme Court has likened this burden to a showing of but-for causation. The evidence of but-for causation must be based on more than mere speculation, conjecture, or surmise." (citation modified)).

[39] *Sunderman v. Westar Energy, Inc.*, 307 F. App'x. 224, 229 (10th Cir. 2009) (concluding that no causal connection could exist because the "alleged retaliatory acts . . . occurred *prior* to [the] protected activity—the filing of [the] EEOC charge"); *see also Debe v. State Farm Mut. Auto. Ins.*, 860 F. App'x. 637, 640 (11th Cir. 2021) ("Yet, if the alleged retaliatory conduct occurred <u>before</u> the employee engaged in protected activity, the two events cannot be causally connected."); *Chivers v. Wal-Mart Stores, Inc.*, 641 F.3d 927, 933 (8th Cir. 2011) ("The record indicates that these adverse employment actions occurred sometime before Clay's fourth and fifth reports of discrimination. Thus, Knipp's conduct cannot be causally related to these reports."); *Wood v Univ. Physicians Healthcare*, 657 F. App'x. 643, 645 (9th Cir. 2016) ("Wood cannot establish a causal link between her protected activity and her denied requests when the denials occurred before the protected activity.").

and IV to the extent they rely upon allegations of the EEOC Charge as protected activity. Defendant's motion is otherwise **denied**.

**IT IS SO ORDERED.**

Dated: September 28, 2026

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE